Lula ADAMS, Avelino Alvarez, Isabelle Archuletta, Julian Baker, Donna Barger for Lori Barger, Emily Bell, David Bennett, Clara Bonger, Paul Boston, Jessie Boyd for Bonnie Boyd, Pinya Breyman, Jeanette Buttz, Constance Carey, Mary Cleveland, Annie Chilcote, Pearl Colegrove, Marjorie Collard, Carl Courts, Imogene Davis, Lois Davis, Charles DiDuglielmo, Gladys Ellis, Alfred Feeruz, Anna L. Fisher, Edna Fisher, Gilbert Gallegos, Annie Garcia, Roberta Garrett, Elizabeth Goff, Viola Goldsmith, Angela Griffie, Carol Gunderson, Silvina Guzman, Jeffrey Lee Ham, Mary Harrison, Kyo Ho, Marie Horchem, Luanne Hudson, Charles Hutto, Martha Lenhart for Carl Jabs, Macolee Jackson, May Jenberg, Edward T. Johnson, Zenobia Juniel, Rosetta Kellum, Mary E. Kirsch for Karen Ann Kirsch, Peter Lavender, Stephen S. Law, Marvin Lovette for Angela and Laura Lovette, Mary Lummie, Dominic Macaluso, Corina Maestas, Deena Mansfield, Sandra Manzanares for Jose Manzanares, Lilly Manzanares, Connie Martinez, Jennie Martinez, Mary Hermisillo for John Martinez, Shirley Maynard, Mitchell P. McAndrews, Colleen McCrum, Ruby McElroy, Leslie Mejia, Lillian Mendelsohn, Jerry Merseal, Ethel Millspaw, Marie Moreno, Linda Morris for Brenda Morris, Mary M. Nichols, Larry Nitsch, Dora Ortiz, Ralph Osborne, Vivian Pappas for Leah Pappas, Gordon Paulson, Tracy Peterson, Jimmie Phelps, Patricia Roem for Cathy Prescott, Jack Provenzano, Elizabeth Reckerd, Frances Reed, Dorothy Phillips Roach, Harold Rollins, Pauline Sanchez, Claire Sanwick, Lucille Schreiber, Mary Simon, Brian R. Stanley, Avelina Starr, Zalmon Stranzanski, Walter Taschner, Gertrude Tatum, William Troppmann, Lillie Tynes, Lou Etta Vaganka, Walter Weingarten, Mrs. Cecilia White for Julia C. White, Robert White, Helen Zink, on behalf of themselves and all others similarly situated, Plaintiffs–Appellants,

v.

COLORADO DEPARTMENT OF SOCIAL SERVICES, Colorado State Board of Social Services, The Division of Administrative Hearings, Department of Administration, Controller of the State of Colorado, Irene Ibarra, Director of the Colorado Department of Social Services, in her official capacity, and Robert Bauserman, Robbie L.

Bean, Feliz S. Cordova, Suzanne E. Dosh, Sharon L. Hill, Marshall Kaplan, Mary Kyer, Robert J. Richardson, and John P. Stone, members of the Colorado State Board of Social Services, each individually and in his or her official capacity, Defendants–Appellees.

No. 90CA0988.

Colorado Court of Appeals, Div. III.

Aug. 29, 1991.

As Modified on Denial of Rehearing Sept. 19, 1991.

Certiorari Denied Jan. 27, 1992.

Legal Aid Society of Metropolitan Denver, Peter Komlos–Hrobsky, Mary Catherine Rabbitt, Denver, for plaintiffs-appellants.

Gale Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Wade Livingston, Asst. Atty. Gen., Denver, for defendants-appellees.

Opinion by Judge DUBOFSKY.

This class action is brought on behalf of individuals who were excluded, by virtue of a new regulation adopted by defendant Colorado Department of Social Services (Department), from receiving State Home Care Allowance (HCA) benefits. One hundred seventy-two individuals were certified by the trial court as constituting a class that was adversely affected by the implementation of this new regulation. Plaintiffs appeal the trial court's summary judgment entered in favor of defendants. We reverse.

The Colorado Department of Social Services administers public assistance programs for the benefit of Colorado residents under a grant of statutory authority. *See* §§ 26–2–104 and 26–2–108, C.R.S. (1989 Repl.Vol. 11B). One such program, the State Home Care Allowance Program, begun in about 1963, provides payments to individuals who are already recipients under the Old Age Pension (OAP) program, Aid to the Blind (AB) program, and Aid to the Needy Disabled (AND) program. Section 26–2–114, § 26–2–120, and § 26–2–119, C.R.S. (1989 Repl.Vol. 11B). It consists of supplementary payments made to recipients for personal care which they are no longer able to provide for themselves. Section 26–2–114, C.R.S. (1989 Repl.Vol. 11B). Payments are made to assist recipients in the administration of medication, exercise, personal hygiene, and activities of daily living including preparation of meals. Section 26–2–114(2), C.R.S. (1989 Repl.Vol. 11B).

From 1963 until 1988, it appears that eligibility for HCA was determined by applying a physician's letter of recommendation to the standards under the Department regulations.

The affidavits submitted relative to the summary judgment motion reflect that the new 1988 standards significantly limited the right of individuals to obtain HCA benefits. These new regulations require a 16–point threshold score by a potential recipient on a functional impairment test before such individual is eligible for HCA. The HCA payment is based on a final "need for care" assessment by the State Department.

I.

■ Plaintiffs argue that the new regulations adopted by the Department conflict with the relevant enabling statutes and, therefore, exceed the authority granted to the Department under those statutes. Plaintiffs primarily rely on the wording of § 26–2–114(2)(a), C.R.S. (1989 Repl.Vol 11B) to support this contention. Plaintiffs also assert that § 26–2–114(2)(a) mandates that any person receiving OAP, AB, or AND benefits who is in need of home care services is eligible and therefore must be provided HCA funds. We agree with plaintiffs that the regulations cannot stand, but do not find the statute as encompassing as plaintiffs urge.

Section 26–2–114(2)(a) provides:

"The state board, with the consent of the general assembly, may provide, from funds—available pursuant to article XXIV of the state constitution, for special needs in the form of adult foster care or home care for persons eligible to receive old age pensions. For purposes of this paragraph (a), adult foster care means the care and services defined in section 26–1–111(2)(j), and home care means care provided to an eligible recipient in his own home pursuant to rules of the state department when the recipient requires personal care that he is no longer able to provide for himself. Need for home care shall be certified by the recipient's attending physician. Home care provided pursuant to state department rules includes, but is not limited to, supervision of self-administered medications, exercise, assistance in personal

hygiene and activities of daily living, and preparation of meals. In making the determination of the need for home care to be provided pursuant to this paragraph (a), the county department shall first determine if personal care can be provided as authorized in section 26–4.5–104.5 or 26–4.5–109.5."

The Department asserts that the definition of "home care" in this statute does not legislatively determine who will be eligible to receive Home Care Allowance benefits. Instead, the Department relies on the language of the statute granting it the right to provide home care "pursuant to the rules of the state department." The Department further argues that, by virtue of § 26–2–114(1), C.R.S. (1989 Repl.Vol. 11B), the State Board of Social Services may opt not to allocate any HCA funds for OAP benefits. Thus, since the entitlement to HCA is not automatically granted, it argues that rules and regulations may be promulgated to administer the program based on the eligibility needs assessment as determined by the State Board of Social Services. We reject this analysis.

Section 26–2–114(2)(a) operates under the OAP program, but its HCA provision appears to be the springboard for the entire HCA program, including AND and AB. Irrespective of whether eligibility requirements for HCA arise in regard to an OAP, AB, or AND recipient, the Department has treated the eligibility requirements for HCA similarly. Furthermore, applying the § 26–2–114(2)(a) statutory definition to AND and AB cases gives a consistent effect to the legislative purpose in providing for HCA payments. *See Whisler v. Kuckler*, 36 Colo.App. 200, 538 P.2d 477 (1975), *rev'd on other grounds*, 191 Colo. 260, 552 P.2d 18 (1976). We also note that in both its pre- and post- 1988 regulations, the Department has incorporated in its eligibility criteria most of the categories stated in § 26–2–114(2)(a), *i.e.*, assistance in personal hygiene and activities of daily living, preparation of meals, etc.

Administrative agencies are legally bound to comply strictly with their enabling statutes. *Sherrerd v. Johnson*, 32 Colo.App. 367, 511 P.2d 923 (1973). The authority to regulate does not include the authority to legislate. *Big Top, Inc. v. Schooley*, 149 Colo. 116, 368 P.2d 201 (1962). Therefore, unless expressly or impliedly authorized by statute, administrative rules and regulations are without force and effect if they add to, change, modify, or conflict with an existing statute. *Flavell v. Department of Welfare*, 144 Colo. 203, 355 P.2d 941 (1960); *Denver v. Gibson*, 37 Colo.App. 130, 546 P.2d 974 (1975).

When a court construes a statute, it must: (1) consider the statute as a whole so as to ascertain the legislative intent, *R & F Enterprises, Inc. v. Board of County Commissioners*, 199 Colo. 137, 606 P.2d 64 (1980); (2) construe the whole of the act to give a consistent, harmonious, and sensible effect to all of its parts, *Travelers Indemnity Co. v. Barnes*, 191 Colo. 278, 552 P.2d 300 (1976); and (3) consider the ends that the statute was designed to accomplish and the consequences that would follow from alternative constructions. *Mooney v. Kuiper*, 194 Colo. 477, 573 P.2d 538 (1978). A court is not permitted to add an important limitation or qualification to a statute. *Estate of Bourquin*, 84 Colo. 275, 269 P. 903 (1928).

Applying these general principles here, we conclude that the Department's regulatory scheme in determining eligibility for HCA is not in conformity with the statute. *See Rodgers v. Atencio*, 43 Colo.App. 268, 608 P.2d 813 (1979). And, while plaintiffs make a compelling argument that, under the plain meaning of § 26–2–114(2)(a), a person who receives OAP benefits and requires personal care in those areas listed in the statute is *ipso facto* entitled to HCA benefits, we conclude that this is too expansive a reading of the statute. A person who has minor functional difficulties in caring for his own personal needs but would not inevitably require nursing home or institutional care because of a denial of HCA funds may not be eligible for such funds.

In enacting §§ 26–2–114(2)(a), 26–2–119, and 26–2–120, the General Assembly has defined in large part who is eligible for HCA benefits. If, however, all persons

who have demonstrated some difficulty in providing the listed home care services for themselves are not eligible for HCA benefits, then there is an ambiguity in the statute as to who is eligible.

To resolve this ambiguity, we must ascertain the purposes the statute was designed to accomplish and the consequences that follow from alternative constructions of the statute. *Mooney v. Kuiper, supra.*

■ It is apparent that one of the primary objectives to be obtained through the HCA program is to permit individuals with disabilities to receive personal services in their homes in order to maintain their independence so they can stay out of nursing homes or institutionalized care facilities. This legislative objective in providing HCA benefits can be ascertained, in part, by reading § 26–2–114(2)(a) in conjunction with § 26–4.5–102, § 26–4.5–104.5, and § 26–4.5–109.5. The General Assembly has specifically cross-referenced § 26–2–114(2)(a) with § 26–4.5–104.5 and § 26–4.5–109.5 as part of determining a person's eligibility or need for HCA benefits under § 26–2–114(2)(a).

Section 26–4.5–104.5 and § 26–4.5–109.5 are part of the Home Health Act provided through § 26–4.5–101, et seq. Section 26–4.5–102 states that the legislative purposes for this statutory title include:

"(a) to maintain long term care eligible persons at home;

(b) to minimize admission to institutions and provide for deinstitutionalization of eligible persons who can be served in home and community settings;

(c) to provide that eligible persons who are moderately impaired or frail but who have the capacity to remain in an independent living situation have access to the appropriate social and health services without which independent living would not be possible;"

Accordingly, because of the direct reference to and incorporation of § 26–4.5–104.5 and § 26–4.5–109.5 by § 26–2–114(2)(a), we view the legislative purposes stated in § 26–4.5–102 to be applicable to § 26–2–114(2)(a).

In order to discern and implement the General Assembly's intent, the statutes interrelating and dealing with the same subject should be harmonized. *See* § 2–4–212, C.R.S., (1980 Repl.Vol. 1B); *Seibel v. Colorado Real Estate Commission*, 34 Colo. App. 415, 530 P.2d 1290 (1974); *Blue River Defense Committee v. Town of Silverthorne*, 33 Colo.App. 10, 516 P.2d 452 (1973).

For these reasons, we conclude that the Home Care Allowance program is intended to keep recipients independent and prevent their placement, if possible, in nursing homes.

Furthermore, the pre–1988 regulations of the Department indicate that one of the primary purposes of the HCA program was to enable recipients to function independently in their homes and thereby avoid nursing homes or institutionalized facilities. *See* 12 Code Colo.Reg. 2509–2, § 7.100, et seq. (1985).

For example, 12 Code Colo.Reg. 2509–2, § 7.100.1 (1985) states in relevant part:

"MISSIONS STATEMENT

This program [including HCA,] is designed to provide or purchase services for eligible aged and disabled adults to aid them to remain in the community and to prevent institutionalization."

The affidavits submitted by plaintiffs give clear examples of how the 172 people certified as members of the class have been adversely affected by the changes in the Department's regulations. The plaintiffs have serious functional difficulties in administering medication, preparing meals, caring for their personal hygiene, and participating in the activities of daily living. They previously received HCA benefits, but under the Department's new regulations, are no longer eligible for such benefits. As a consequence, many of them will be forced to live in a nursing home or to be institutionalized.

The plaintiffs' uncontested affidavits graphically demonstrate their condition and the impact of the new regulations on them. Lula Adams' affidavit indicates that she has had several heart attacks and that one

of her lungs has collapsed. She also has a liver disease. She is severely limited in her ability to walk. Because of these ailments, she is unable to vacuum, launder, shop, house clean, or transport herself to physician's appointments. She has had Home Care services for over 20 years and without them, she cannot live on her own.

The affidavit of plaintiff Marjorie Collard indicates that she lives alone and suffers from severe emphysema which makes it necessary for her to receive bottled oxygen 24 hours a day. Her breathing is labored and even simple tasks exhaust her. She has significant arthritic problems and uses a walker or a wheelchair. HCA benefits have made it possible for her to maintain her own apartment. If she loses these benefits, she will be institutionalized.

William Troppmann is a quadriplegic and needs assistance with all of his daily needs. His home care allowance has been terminated.

The affidavit of Tony Macaluso's treating physician states that Macaluso is a quadriplegic who does not have motor function below the lower cervical spinal cord level. Because of this disability, he needs HCA assistance.

Another affidavit states that Bonnie Boyd suffers from a debilitating Parkinson's-dementia complex and chronic urinary tract infections and her only chance of maintaining any quality of life is to stay at home with her husband and that HCA benefits are necessary to maintain her at home.

These affidavits poignantly illustrate the plaintiffs' compelling need for HCA and the dire consequences to them of not receiving this assistance.

In sum, we determine that, for HCA regulations to be sustainable, they must be designed to further this legislative purpose of assisting persons to avoid institutionalization. We further conclude from these uncontested affidavits that the impact of these regulations on many of the plaintiffs will force institutionalization.

II.

The Department argues that its interpretation of the applicable statute should be given deference, and on this basis, this court should uphold the 1988 eligibility regulations. Because the 1988 regulations represent a non-contemporaneous interpretation of § 26–2–114(2)(a), we disagree with the Department.

If there is a *contemporaneous* interpretation of a statute by an administrative body charged with the responsibility of applying that enactment, the administrative interpretation should normally be granted significant weight by the courts. *Dodge v. Department of Social Services,* 657 P.2d 969 (Colo.App.1982); *Travelers Indemnity Co. v. Barnes, supra.* Here, however, the Department between 1963 and 1987 interpreted the HCA enabling statute, *i.e.,* § 26–2–114, in a manner which largely prevented the institutionalization of OAP, AND, and AB recipients who, with HCA payments, could live independently.

Indeed, the Department's *prior* interpretation and practice in implementing this statute can be given substantial consideration by us in interpreting the same statute. *See Contested Case of Ebenezer Society v. Minnesota Department of Human Services,* 433 N.W.2d 436 (Minn.App.1988). *See also Henning v. Industrial Welfare Commission,* 46 Cal.3d 1262, 252 Cal.Rptr. 278, 762 P.2d 442 (1988) (although a contemporaneous administrative interpretation of a statute is entitled to great weight, this is not true of a subsequent contradictory interpretation).

Although the precise point at which a Department regulation violates the statutory purpose of § 26–2–114(2)(a) is difficult to determine, we give the previous and more contemporaneous interpretation by the Department of this and other HCA statutes significant weight in determining that question. Since the eligibility regulatory scheme adopted here has the undisputed effect of forcing numerous prior HCA beneficiaries from independent living situations into nursing homes or institutions, we conclude that the 1988 regulations contravene the purpose of the applicable HCA

statutes as reflected in the earlier regulatory interpretation. *Rodgers v. Atencio, supra.*

Furthermore, we note that § 26–2–114(2)(a) requires that the evaluation of the applicant's physician be considered in determining the applicant's eligibility for HCA. Therefore, a Department regulation establishing eligibility criteria must give appropriate consideration to the evaluation of the applicant's physician of the need for HCA.

## III.

■ The Department next argues that since it based this 16–point regulation scheme on financial considerations, it should be upheld. We initially note that defendant has not demonstrated what budgetary constraints are involved here and has not established a rational connection between these budgetary "facts" and the choice it made. *See Amisub (PSL) v. State of Colorado Department of Social Services,* 879 F.2d 789 (10th Cir.1989). Furthermore, we, like other courts, are unwilling to permit an administrative body to rewrite legislation under the auspices of budgetary constraints. *See Alabama Nursing Home Ass'n v. Calafano,* 433 F.Supp. 1325 (M.D.Ala.1977) *rev'd and vacated in part on other grounds sub nom. Alabama Nursing Home Ass'n v. Harris,* 617 F.2d 385 (5th Cir.1980). For these reasons, we reject defendant's argument that the fiscal impact of the regulations should determine our decision here.

We therefore determine that the 16–point 1988 Department regulation adds to and contradicts the applicable HCA statutes and is therefore without force and effect.

The summary judgment approving the exclusion of the plaintiffs from receiving HCA benefits is reversed, and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

TURSI and RULAND, JJ., concur.