2013 COA 41

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Craig McKenzie FAIR, Defendant–appellant.**

**Court of Appeals No. 11CA1377**

Colorado Court of Appeals,
Div. VII.

Announced March 28, 2013

John W. Suthers, Attorney General, Susan E. Friedman, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

GarciaLaw, LLC, J. Alberto Garcia, Broomfield, Colorado, for Defendant–Appellant

Opinion by JUDGE FURMAN

¶ 1 Defendant, Craig McKenzie Fair, appeals the district court's orders revoking his probation and denying his motion to stay the probation revocation proceedings and the sentence imposed on revocation. We affirm.

¶ 2 The victim is a thirty-two-year-old, quadriplegic woman who, ten years earlier, had an allergic reaction to medication, causing her paralysis and brain damage. Defendant was her caregiver.

¶ 3 The victim told a police detective that defendant raped her. Defendant subsequently pleaded guilty to sexual assault (a class 4 felony) in exchange for the dismissal of one count of sexual assault of·an at-risk adult (a class 2 felony) and one count of

unlawful sexual contact of an at-risk adult (a class 6 felony).

¶ 4 Defendant's offense specific evaluation and presentence investigation report (PSIR) recommended that he be placed in offense specific community based treatment and supervision because, when he pleaded guilty, he admitted to the sexual assault. Defendant's PSIR described his risk to reoffend as in the "Level 2 'moderate to high'" risk range. This level consists of

a) [offenders who] admit to some of the behavior involved in the offense, but justify its occurrence or minimize its importance, b) offenders who admit the facts of the offense, but deny the sexually abusive aspect of the offense, and/or c) offenders who do not admit committing the current sexual offense, but admit to engaging in less harmful sexual behaviors.

Sex Offender Management Board (SOMB), *Standards and Guidelines for the Assessment, Evaluation, Treatment and Behavioral Monitoring of Adult Sex Offenders* Standard 3.510.

¶ 5 The court agreed with the recommendations contained in the offense specific evaluation and PSIR and sentenced defendant to sex offender intensive supervision probation (SOISP) for a term of ten years to life. As part of the sentence, the court ordered defendant to "complete sex offender specific treatment." Defendant agreed to abide by specific conditions of probation (he signed them), which required him to

- "attend and actively participate in a sex offender evaluation and treatment program approved by the probation officer";
- "abide by the rules of the treatment program, and the treatment contract"; and
- "successfully complete the program to the satisfaction of the probation officer and the treatment provider."

Thus, when the court placed defendant in offense specific community based treatment and supervision, defendant was a Level 2 risk. He did not, however, remain at this level.

¶ 6 Some months later, defendant's probation officer filed a motion to revoke defendant's probation based on defendant's termination from offense specific treatment. Defendant had been terminated because, in treatment, he refused to admit to committing the offense. This refusal resulted in his probation officer reclassifying defendant as a Level 3 denier.

¶ 7 The SOMB regulations define Level 3 deniers as offenders who "deny committing the current offense and refuse to acknowledge responsibility for even remotely similar behaviors. . . . These types of denial are most resistant to change." SOMB Standard 3.510.

¶ 8 One week prior to the revocation hearing, defendant moved to vacate his guilty plea. At that hearing, defendant requested that the proceedings be stayed so that he could pursue his motion to vacate his guilty plea. The district court proceeded with the revocation hearing over defendant's objection. After finding that defendant had violated the terms and conditions of his SOISP, the court revoked his probation.

¶ 9 At sentencing, defendant again requested that the proceedings be stayed so that he could pursue his motion to vacate his guilty plea. The district court denied his request and sentenced him to a term of two years to life in the Department of Corrections (DOC).

¶ 10 On appeal, defendant contends the district court abused its discretion in revoking his probation and in sentencing him to a term in the DOC. He also contends the district court's refusal to continue the revocation proceedings denied him the opportunity to properly litigate his motion to vacate his guilty plea. We reject each contention in turn.

## I. Probation Revocation

¶ 11 We first consider whether the district court abused its discretion in revoking defendant's probation and in sentencing him to a term in the DOC. We conclude it did not.

¶ 12 Probation is a privilege, not a right. If a probationer violates any condition of probation, the order of probation may be

revoked. *People v. Lientz,* 2012 COA 118, ¶ 44, —— P.3d ——; *People v. Colabello,* 948 P.2d 77, 79 (Colo.App.1997). Whether probation has been violated is a question of fact, and, once a violation is found, the decision whether to revoke a defendant's probation is discretionary with the district court. §§ 16–11–205, 16–11–206, C.R.S. 2012; *People v. Ickler,* 877 P.2d 863, 866 (Colo.1994).

¶ 13 Guiding Principle 2 of the SOMB Standards provides guidance for the district court's exercise of its discretion. Principle 2 states that "[s]ex offenders are dangerous" and that "[s]ome offenders may be too dangerous to be placed in the community."

¶ 14 The court found defendant was just such an offender based on the following evidence:

1. The letter terminating defendant from treatment, which was introduced into evidence at the revocation hearing, stated that, after entering treatment, defendant "reported that he had not sexually assaulted [the victim] and that all sexual contact with her was 'consensual.'"

2. The letter stated that the agency (Teaching Humane Existence) responsible for treating defendant was obligated to terminate him from treatment because of his ongoing denial.

3. Defendant's probation officer testified, generally, that defendants who remain in denial cannot successfully complete treatment.

¶ 15 Defendant nevertheless contends the district court's order revoking his probation violated the SOMB regulations. We disagree.

■ ¶ 16 The interpretation of a regulation is a legal question we review de novo. *Sohocki v. Colo. Air Quality Control Comm'n,* 12 P.3d 274, 277 (Colo.App.1999). In reviewing a regulation, we apply the canons of statutory construction. *Benuishis v. Indus. Claim Appeals Office,* 195 P.3d 1142, 1145 (Colo.App.2008). We look first to the regulation's plain language and interpret its terms according to their plain and ordinary meaning. *Id.*

¶ 17 It was undisputed that by the time of the revocation hearing defendant was no longer a Level 2 risk. Instead, as noted, his probation officer classified him as a Level 3 denier.

¶ 18 The SOMB regulations provide that Level 3 deniers "*shall not* be recommended for community based treatment and supervision." SOMB Standard 3.520 (emphasis added). The SOMB discussion of this standard explains why:

> Secrecy, denial, and defensiveness are part of sex offenders' pathology. Almost all offenders fluctuate in their level of accountability or minimization of the offenses. Although most are able to admit responsibility for the sexual offense relatively soon after conviction, some offenders do not. As denial impedes treatment engagement and progress, an offender's continued denial of the sexual offense after conviction threatens community safety. Offender denial is highly distressing and emotionally damaging to victims.

(Footnote omitted.)

■ ¶ 19 Defendant contends he should have first been offered a Denier Intervention under SOMB Standard 3.530 (applying to Level 3 deniers) before the district court revoked his probation. Standard 3.530 provides:

> When a sex offender in severe denial is placed in the community, *despite the requirements of 3.520,* (e.g. on mandatory parole), a Denier Intervention shall specifically address the sex offender's denial and defensiveness as it relates to preventing the sex offender from successfully participating in sex offender treatment. Denier Intervention shall not exceed three months and shall be regarded as preparatory for offense-specific treatment.

(Emphasis added.) SOMB Standard 3.530, however, only applies to defendants who are Level 3 deniers *when* they are placed in the community. SOMB Standard 3.530 is thus an exception to SOMB Standard 3.520 and would apply in the rare case when a sex offender who is a denier must nevertheless be placed in the community because of mandatory parole. The discussion of SOMB Standard 3.530 explains:

Although all offense-specific treatment programs usually begin by addressing minimization and defensiveness, Denier Intervention for those in Level 3 Denial, typically occurs separately from regular group therapy that is provided for offenders who have, at a minimum, admitted the crime of conviction. *Level 3 deniers are not considered amenable to offense specific treatment. They do not admit sex offenses and therefore do not acknowledge a need to work on issues that contribute to their offending behavior or re-offense plans.* Since severe denial prevents therapists from obtaining critical information from the offender, they are unable to develop effective interventions to address the offending behavior. Further, including deniers in regular groups may disrupt the group's focus on treatment tasks and encourage other offenders to deny their crimes and can increase their level of denial.

(Emphasis added.) Because defendant was not a Level 3 denier when the court placed him in the community, we conclude SOMB Standard 3.530 does not apply to him. Therefore, we affirm the district court's revocation order and sentence. *See Ickler,* 877 P.2d at 866.

## II. Request to Stay Proceedings

■ ¶ 20 We next consider whether the district court's refusal to continue the revocation proceedings denied defendant the opportunity to properly litigate his motion to vacate his guilty plea. We conclude it did not.

■ ¶ 21 "A motion for a continuance is addressed to the sound discretion of the trial court and will not be reversed absent a clear showing of abuse of that discretion." *People v. Zimmerman,* 616 P.2d 997, 1000 (Colo. App.1980) (citing *People v. McClure,* 190 Colo. 250, 545 P.2d 1038 (1976)).

¶ 22 Defendant has cited no legal authority to support this argument, nor has he demonstrated how he would be prevented from litigating his postconviction motion after this current appeal is discharged. Under these circumstances, we conclude the district court did not abuse its discretion in denying his

request. *See People v. Carr,* 185 Colo. 293, 297, 524 P.2d 301, 303 (1974).

¶ 23 The orders and sentence are affirmed.

JUDGE ROMÁN concurs.

JUDGE HAWTHORNE dissents.

JUDGE HAWTHORNE dissenting.

¶ 24 Because I disagree with the conclusion reached by the majority in Part I of the opinion, I respectfully dissent.

¶ 25 As relevant here, SOMB Standard 3.530 provides:

When a sex offender in severe denial is placed in the community ... a Denier Intervention shall specifically address the sex offender's denial and defensiveness as it relates to preventing the sex offender from successfully participating in sex offender treatment. Denier Intervention shall not exceed three months and shall be regarded as preparatory for offense-specific treatment.

Colo. Sex Offender Mgmt. Bd., *Standards and Guidelines for the Assessment, Evaluation, Treatment and Behavioral Monitoring of Adult Sex Offenders* 47 (Nov. 2011), *available at* http://dcj.state.co.us/odvsom/sex_offender/SO_Pdfs/2012%20AD ULT%20 STANDARDS%20FINAL%20C.pdf. Thus, Denier Intervention is designed to promote successful sex offender treatment by (1) specifically addressing the sex offender's denial and defensiveness vis-á-vis his or her successfully participating in treatment, and (2) being preparatory to offense specific treatment. *See id.*

¶ 26 In the "Definitions" section, the SOMB Standards further provide:

Denier Intervention is designed primarily for those in Level 3 Denial (please refer to Standard 3.500). It occurs separately from a regular group therapy.... [It] may include a variety of modalities specifically designed to reduce denial, minimization, and resistance to treatment and supervision.

*Id.* at 11.

¶ 27 Standard 3.510 defines "Level 3 Denial" as "[s]evere [d]enial" that "consists of

offenders who deny committing the current offense and refuse to acknowledge responsibility for even remotely similar behaviors." *Id.* at 46–47.

¶ 28 Read together, these Standards require that a sex offender in "severe denial" or "Level 3 Denial" who is placed in the community be given a "Denier Intervention" that is separate from the sex offender's regular group therapy. *See Schlapp v. Colo. Dep't of Health Care Policy & Financing,* 2012 COA 105, ¶ 9, 284 P.3d 177 ("We read the provisions of a regulation together, interpreting the regulation as a whole."); SOMB Standards at 11, 46–47.

¶ 29 Here, defendant was a Level 3 denier sex offender who had been placed in the community. Nevertheless, he was not given a Denier Intervention before he was terminated from treatment. Based on my aforementioned reading of the Standards, I believe this was error.

¶ 30 The majority notes that defendant was not a Level 3 denier at the time that he was first placed in the community, but that his probation officer changed his classification to a Level 3 denier while he was in his community placement. However, I do not believe that fact changes the result here because defendant was nevertheless a Level 3 denier who had been placed in the community at the time that he was terminated from treatment. Therefore, as discussed, I believe he was entitled to a Denier Intervention. *See Schlapp,* ¶ 9; SOMB Standards at 11, 46–47. To conclude otherwise thwarts the SOMB Standards' design for successful sex offender treatment.

¶ 31 Accordingly, I believe that the trial court erred in revoking defendant's probation based on his termination from treatment, and I would therefore reverse the revocation of defendant's probation.