129 Nev., Advance Opinion 29

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| THE STATE OF NEVADA, DEPARTMENT OF TAXATION, Appellant, vs. CHRYSLER GROUP LLC, Respondent. | No. 58714 |

FILED

MAY 0 2 2013

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK



Appeal from a district court order granting a petition for judicial review in a tax action. Eighth Judicial District Court, Clark County; David B. Barker, Judge.

*Reversed.*

Catherine Cortez Masto, Attorney General, Deonne E. Contine, Senior Deputy Attorney General, and Jedediah R. Bodger, Deputy Attorney General, Carson City,
for Appellant.

Kolesar & Leatham and Kenneth A. Burns, Las Vegas; Akerman Senterfitt and Peter O. Larsen, Jacksonville, Florida,
for Respondent.

---

BEFORE HARDESTY, PARRAGUIRRE and CHERRY, JJ.

*OPINION*

By the Court, HARDESTY, J.:

Respondent Chrysler Group, LLC, a motor vehicle manufacturer, reimbursed two buyers of defective vehicles the full purchase price, including sales tax, pursuant to Nevada's lemon law.

13-12811

Chrysler subsequently sought from appellant Department of Taxation refunds of the sales taxes that the vehicles' retailers had collected and remitted when they originally sold the vehicles to the buyers. Although the Department had previously refunded lemon law sales tax reimbursements to manufacturers, it denied Chrysler's refund requests because the Nevada Attorney General's Office advised the Department that there is no statutory authority for such refunds. In this appeal, we are asked to determine whether Chrysler is entitled to a sales tax refund under NRS 597.630, Nevada's lemon law; NRS 372.630, Nevada's sales and use tax refund statute; and NRS 372.025, Nevada's statute governing gross receipts for retailers, or if Chrysler is otherwise entitled to a refund because the Department previously granted such refunds. Because Nevada law does not allow for such a refund and because the Department is not required to adhere to its prior erroneous interpretation of the law, we conclude that Chrysler is not entitled to a refund.

## FACTS AND PROCEDURAL HISTORY

Chrysler's requests for refunds were based on a prior written Department policy in effect since at least 2005 to refund to manufacturers the sales taxes reimbursed under the lemon law. The Department changed this policy in 2009 after being informed by the Nevada Attorney General's Office that refunding the sales tax was not appropriate under Nevada's statutory scheme. Thus, Department auditors denied Chrysler's refund requests because the Department's legal counsel advised the auditors that there was no statutory authority in Nevada permitting the Department to issue the requested sales tax refunds.

Chrysler appealed these decisions to the Department's hearings division, where they were considered together and reversed by an administrative law judge. The administrative law judge found that the

tax was an overpayment to the Department because reimbursement of the full purchase price to the buyer resulted in a statutory rescission of the underlying sales contract. As such, the administrative law judge found that Chrysler was entitled to a refund of the sales tax because Chrysler had borne the economic burden of the tax by being required to refund it pursuant to the lemon law.

The Department appealed this decision to the Nevada Tax Commission (NTC), which reversed the hearing division's decision because it concluded that neither the lemon law nor Nevada's tax statutes expressly authorized reimbursing vehicle manufacturers for any taxes repaid to buyers under the lemon law. Chrysler then filed a petition for judicial review of the NTC's decision in the district court. The district court granted the petition for judicial review, concluding that Chrysler was entitled to a refund because, when Chrysler repaid the sales taxes to the buyers, its repayment statutorily rescinded the underlying sales transactions and rendered the sales tax an overpayment to the Department. This appeal followed.

## DISCUSSION

The Department contends that the district court erred in overturning the NTC's decision because there is no statutory authority permitting it to provide vehicle manufacturers a refund of sales taxes they reimburse to buyers under Nevada's lemon law. Chrysler asserts that it is entitled to a refund based on taxes it reimbursed to buyers under NRS 597.630, Nevada's lemon law; NRS 372.630, Nevada's sales and use tax refund statute; and NRS 372.025, Nevada's statute governing gross receipts for retailers. Chrysler further argues that it is entitled to a refund given the Department's prior policy of granting such refunds. We disagree with both of Chrysler's contentions.

"Statutory interpretation is a question of law that we review de novo." *Consipio Holding, BV v. Carlberg*, 128 Nev. ___, ___, 282 P.3d 751, 756 (2012). "It is well established that the court must interpret statutes consistent with the intent of the [L]egislature." *Steward v. Steward*, 111 Nev. 295, 302, 890 P.2d 777, 781 (1995). Thus, when a statute's language is plain and unambiguous, we give that language its ordinary meaning. *Consipio Holding*, 128 Nev. at ___, 282 P.3d at 756.

Under NRS 579.630, Nevada's lemon law, a vehicle manufacturer must replace or repurchase any vehicle that fails to conform to the manufacturer's warranties "after a reasonable number of [repair] attempts," when the vehicle has an irreparable defect that "substantially impairs the use and value of the motor vehicle." NRS 597.630(1). If it elects to repurchase the vehicle, a manufacturer must refund the full purchase price, less a reasonable amount to account for the buyer's use. NRS 597.630(1)(b). The full purchase price includes "all sales taxes, license fees, registration fees and other similar governmental charges." *Id.* NRS 597.630 is silent as to whether a vehicle manufacturer is entitled to a refund for the amount of sales tax it reimburses to a buyer.[1] Accordingly, no refund is directly provided for within that statute.

---

[1]Other state lemon laws expressly address this issue. These states either provide for such a refund, *see, e.g.*, Ariz. Rev. Stat. Ann. § 44-1263(D) (2012) (West); Cal. Civ. Code § 1793.25(a) (West 2013), or require only that manufacturers provide notice or forms to a buyer that assist the buyer in seeking reimbursement of sales taxes from the appropriate tax authority. *See, e.g.*, Md. Code Ann., Com. Law § 14-1503(c) (LexisNexis 2005) (the manufacturer must instruct the consumer to seek a refund from the appropriate agency); N.Y. Gen. Bus. Law § 198-a(c)(2) (McKinney 2012) (same).

Notwithstanding the lemon law's silence on the matter, Chrysler argues that it is entitled to a tax refund pursuant to NRS 372.630, Nevada's sales and use tax refund statute. NRS 372.630(1) requires the Department to refund any amount of taxes that were "paid more than once or . . . erroneously or illegally collected," and that "the excess amount collected or paid must . . . be refunded to the person [who overpaid the tax]." Thus, under the plain language of NRS 372.630, the only party who can receive a tax refund is the party that paid the tax. Similarly, NRS 372.700 states that only a person who paid the tax may seek a tax refund from the Department. In *State v. Obexer & Son*, we recognized the standing requirement set forth in these statutes when we stated that Nevada's tax refund statutes "permit recovery only where the taxpayer himself has borne the financial burden of the tax," and that "[i]f the taxpayer making the claim has collected the tax from his customers, he has suffered no loss or injury, and is not entitled to a credit or refund." 99 Nev. 233, 238, 660 P.2d 981, 984 (1983).

Here, Chrysler did not remit the sales tax that it reimbursed to buyers to the Department of Taxation. Furthermore, Chrysler's obligation to reimburse sales tax to buyers is a statutory obligation imposed by NRS Chapter 597, which is wholly separate from a taxpayer's rights and obligations under NRS Chapter 372. Because Chrysler did not remit the sales taxes to the state, Chrysler lacks standing to seek a sales tax refund under NRS 372.630.

Alternatively, Chrysler argues that a full reimbursement pursuant to the lemon law statute is analogous to a full returned merchandise refund in a retail transaction, for which no sales tax is due. Specifically, Chrysler argues that when buyers return vehicles to Chrysler

and Chrysler reimburses them for the full purchase price and sales tax, the original sales taxes are no longer considered taxable gross receipts under NRS 372.025 and became refundable overpayments to the Department.

By its own terms, NRS 372.025 only applies to retailers, not manufacturers. The amount of sales tax imposed on a retailer is determined by the "'[g]ross receipts' . . . of the retail sales of *retailers*." NRS 372.025(1) (emphasis added); *see also* NRS 372.105. A "retailer" is defined as: "[e]very seller who makes any retail sale or sales of tangible personal property . . ."; "[e]very person engaged in the business of making sales for storage, use or other consumption . . . of tangible personal property . . ."; or "[e]very person making more than two retail sales of tangible personal property during any 12-month period." NRS 372.055(1)(a)-(c). As Chrysler admits, it is not a retailer, and thus, we conclude that Chrysler cannot rely on NRS 372.025 in conjunction with Nevada's lemon law statute to claim a refund of the sales taxes. Accordingly, we conclude that neither NRS 597.630, nor NRS 372.630, nor NRS 372.025 entitles a vehicle manufacturer that reimburses a buyer with the full purchase price of a vehicle, including sales tax, to a sales tax refund.

Our conclusion is consistent with the approach taken by the Connecticut Supreme Court. Connecticut has a lemon law statute, Conn. Gen. Stat. § 42-179 (1998), containing language similar to Nevada's, which also does not provide manufacturers with refunds of reimbursed sales taxes. In interpreting that statute, the Connecticut Supreme Court held that manufacturers were not entitled to sales tax refunds because its lemon law contains "no express indication that the legislature intended to

permit the manufacturer to recover any of the . . . sales tax required to be refunded to the consumer." *DaimlerChrysler Corp. v. Law*, 937 A.2d 675, 686 (Conn. 2007). The Connecticut court reasoned that refunding the sales tax to manufacturers does not advance its lemon law's "concerns of consumer protection," but instead "undermine[s] the incentive to provide nondefective products to consumers." *Id.* at 685.

We agree with the approach taken by Connecticut and note that the legislative intent behind Nevada's lemon law was to protect buyers who purchase defective new vehicles. *See* Hearing on A.B. 59 Before the Assembly Comm. on Commerce, 62d Leg. (Nev., February 16, 1983); *see also Milicevic v. Mercedes-Benz USA, LLC*, 256 F. Supp. 2d 1168, 1175 (D. Nev. 2003) (noting that Nevada's lemon "law was designed to protect" buyers of defective vehicles). Refunding a vehicle manufacturer for reimbursed sales taxes will not create an incentive for the vehicle manufacturer to manufacture nondefective vehicles. The Legislature has not included this remedy in Nevada's lemon law, and Chrysler provides no evidence that the Legislature intended to refund manufacturers for reimbursed sales tax. Accordingly, we decline to read this remedy into the statute, and we conclude that vehicle manufacturers are not entitled to a refund of reimbursed sales tax.[2]

---

[2]Because denial of the sales tax refund is consistent with the remedial purpose of the statute, we reject Chrysler's argument that this improperly transforms the lemon law into a punitive statute. We further reject Chrysler's argument that construing the lemon law to deny manufacturers a refund violates the Separation of Powers Clause of the Nevada Constitution. *See* Nev. Const. art. 3, § 1. By denying such refunds, the Department is not taking any affirmative action under the lemon law, and thus, it is not improperly performing legislative duties. *See id.*

Chrysler also argues, apparently in an attempt to estop the Department from arguing that no refund is due, that the Department violated the Nevada Administrative Procedure Act (APA), NRS Chapter 233B, when it changed its prior policy allowing sales tax refunds for lemon law payments to its current policy denying such refunds.[3] An agency violates the APA if it engages in rulemaking without following the APA's procedural requirements. *Labor Comm'r v. Littlefield*, 123 Nev. 35, 39, 153 P.3d 26, 29 (2007). Rulemaking occurs when an agency "promulgates, amends, or repeals '[a]n agency rule, standard, directive[,] or statement of general applicability which effectuates or interprets law or policy.'" *Id.* at 39-40, 153 P.3d at 29 (alteration in original) (quoting NRS 233B.038(1)(a)). Generally, before an agency can engage in rulemaking, it must provide notice to interested parties and give those parties an opportunity to oppose the proposed rule. NRS 233B.060(1)(a); NRS 233B.061(1).

A statement of general applicability is a policy or rule that applies to multiple parties in a similar manner. *See Public Serv. Comm'n v. Southwest Gas*, 99 Nev. 268, 273, 662 P.2d 624, 627 (1983) (holding that an administrative order directed at one utility company had "general applicability" because it affected "other gas utilities and their customers"). Here, because the Department's change in policy affects all vehicle

---

[3]In addition, Chrysler argues that it is entitled to a refund because an administrative law judgment granted one upon similar facts in the past and, because the statutes have not since been amended, there is no legal basis for a different decision. We reject this argument because "administrative agencies are not bound by *stare decisis*." *Motor Cargo v. Public Service Comm'n*, 108 Nev. 335, 337, 830 P.2d 1328, 1330 (1992); *see also Desert Irrigation, Ltd. v. State of Nevada*, 113 Nev. 1049, 1058, 944 P.2d 835, 841 (1997) ("[N]o binding effect is given to prior administrative determinations.").

manufacturers whose vehicles are sold in Nevada, it is a statement of general applicability. However, we have previously held that "[t]here is no reason to require the formalities of rulemaking whenever an agency undertakes to enforce or implement the necessary requirements of an existing statute." *K-Mart Corporation v. SIIS*, 101 Nev. 12, 17, 693 P.2d 562, 565 (1985).

Additionally, other jurisdictions do not require an agency to use the formal rulemaking process when correcting a policy that is based on an erroneous interpretation of the law. *See, e.g., Amerada Hess Corp. v. State ex rel. Tax*, 704 N.W.2d 8, 18 (N.D. 2005) ("[A]n administrative agency need not use the rulemaking process to correct an erroneous interpretation of a statute."); *Firearms Import/Export Roundtable Trade Group v. Jones*, 854 F. Supp. 2d 1, 13 (D.D.C. 2012) (holding that an "Open Letter" correcting prior policy that did not conform with a statute merely "corrected a prior misapprehension of the statute rather than [assert] new law promulgated pursuant to the agency's rulemaking authority"); *Schlapp v. Colo. Dep't of Health Care and Policy*, 284 P.3d 177, 179-80, 185 (Colo. App. 2012) (holding that the agency did not violate the APA when it corrected its interpretation of eligibility requirements for Medicaid to conform with the applicable state and federal statutes). These jurisdictions reason that requiring administrative agencies to comply with the formal "rulemaking requirements of the APA . . . would lock an agency into an erroneous interpretation of its regulations and governing statutes." *Schlapp*, 284 P.3d at 185.

As we have concluded today, neither Nevada's lemon law nor the tax statutes provide for sales tax refunds to vehicle manufacturers upon reimbursing a buyer pursuant to the lemon law. Because an agency

has no authority to act absent statutory authority, *see Stockmeier v. State, Bd. of Parole Comm'rs*, 127 Nev. ___, ___, 255 P.3d 209, 212 (2011), the Department must deny these refunds. Thus, the Department's prior policy of allowing sales tax refunds to vehicle manufacturers was an erroneous interpretation of the law. Upon obtaining an opinion from the Attorney General, the Department noted its erroneous interpretation in a July 2009 newsletter and stated that its policy change sought to bring the policy into conformity with Nevada's lemon law. In doing so, the Department did not amend any existing regulations or create a new rule to implement an existing statute. Rather, it sought only to correctly implement the existing statute. Since the Department's current tax refund policy is consistent with NRS 597.630 and the applicable provisions of NRS Chapter 372, we conclude that the Department did not violate the APA because it was not required to undertake the formal rulemaking process to correct its prior erroneous policy.[4]

---

[4]Chrysler further argues that denial of the sales tax refunds (1) is an unconstitutional taking and (2) results in the Department being unjustly enriched. We reject Chrysler's takings argument because Chrysler has no property right in a future tax refund. *See McCarran Int'l Airport v. Sisolak*, 122 Nev. 645, 658, 137 P.3d 1110, 1119 (2006) ("An individual must have a property interest in order to support a takings claim."); *United States v. Dow*, 357 U.S. 17, 20 (1958) ("Accordingly, [the claimant] can prevail only if the 'taking' occurred while he was the owner."); *see also United States v. Carlton*, 512 U.S. 26, 33 (1994) ("Tax legislation is not a promise, and a taxpayer has no vested right in the Internal Revenue Code."). We also reject Chrysler's unjust enrichment argument because the sales tax paid to the State never belonged to Chrysler. *See Mainor v. Nault*, 120 Nev. 750, 763, 101 P.3d 308, 317 (2004) ("[U]njust enrichment occurs whenever a person has and retains a benefit which in equity and good conscience belongs to another." (alteration in original) (internal quotations omitted)).

SUPREME COURT
OF
NEVADA

(O) 1947A

Accordingly, for the reasons set forth above, we reverse the district court's order.

_____, J.
Hardesty

We concur:

_____, J.
Parraguirre

_____, J.
Cherry

SUPREME COURT
OF
NEVADA

(O) 1947A