(1) A statement of the availability of the informal dispute settlement mechanism;
(2) The name and address of the Mechanism, or the name and a telephone number of the Mechanism which consumers may use without charge;
(3) A statement of any requirement that the consumer resort to the Mechanism before exercising rights or seeking remedies created by Title I of the [Magnuson-Moss Warranty] Act; together with the disclosure that if a consumer chooses to seek redress by pursuing rights and remedies not created by Title I of the Act, resort to the Mechanism would not be required by any provision of the Act; and
(4) A statement, if applicable, indicating where further information on the Mechanism can be found in materials accompanying the product, as provided in § 703.2(c) of this section.
16 C.F.R. § 703.2(b). "If the warranty is included as part of a longer document, such as a use and care manual," the phrase "[o]n the face of the warranty" means "the page in such document on which the warranty text begins." Id. § 703.1(h)(2).
Here, it is undisputed that BMW's written warranty begins on page 26 of its 2011 7 Series Service and Warranty Information Booklet. (Doc. No. 33-1 at ¶ 11.) It is likewise undisputed that page 26 contains none of the information required by 16 C.F.R. § 703.2(b) ; rather, that information is provided on page 22 of the booklet. (Id. at ¶ 10.) Because BMW failed to provide the information required by 16 C.F.R. § 703.2(b)"on the face of the written warranty," as defined by federal law, Freas was not required to use AUTO LINE before filing this suit.
BMW asks the Court to excuse its technical noncompliance with the FTC's regulations and asserts that there "is no authority to support [Freas'] draconian interpretation *1134 of [ 16 C.F.R. § 703.2(b)'s] disclosure requirements." (Doc. No. 33 at 18.) However, Magnuson-Moss itself expressly provides that a consumer is only required to pursue an informal dispute settlement procedure prior to filing suit if "such procedure, and its implementation, meets the requirements of [the FTC's] rules[.]" 15 U.S.C. § 2310(a)(3)(B) (emphasis added); see also id. § 2310(a)(2) (giving the FTC the authority to "prescribe rules setting forth minimum requirements for any informal dispute settlement procedure which is incorporated into the terms of a written warranty"). Because Congress has conditioned the informal dispute settlement requirement on the warrantor's compliance with FTC rules, it would be inappropriate for the Court to excuse BMW's failure to fully adhere to 16 C.F.R. § 703.2(b). See, e.g., Henson v. Santander Consumer USA Inc., --- U.S. ----, 137 S.Ct. 1718, 1725, 198 L.Ed.2d 177 (2017) ("[I]t is [the courts'] job to apply faithfully the law Congress has written[.]"). Moreover, as the Third Circuit has explained, "the FTC regulations promulgated to guide providers of alternative dispute resolution mechanisms are slanted toward the consumer: consumers must comply with only minimal requirements, while the warrantors must follow more elaborate and more burdensome rules[.]" Harrison v. Nissan Motor Corp. in U.S.A., 111 F.3d 343, 351 (3d Cir. 1997). Requiring technical compliance with the FTC's disclosure requirements makes practical sense; as the FTC put it, alternative dispute resolution procedures are only "useful if consumers realize they exist." F.T.C. Statement of Basis and Purpose for 16 C.F.R. § 703, 40 Fed. Reg. 60,190, 60,194 (1975) (footnote omitted).
Second, Freas was not required to make use of the AUTO LINE program prior to filing suit because the program does not exist in Nevada, where Freas purchased the Vehicle. (Doc. No. 49-1, Romano Decl., ¶ 22; see also Doc. No. 49 at PageID 677.) Although neither Magnuson-Moss nor the FTC's regulations address the scenario before the Court-Freas purchased the Vehicle in a state where BMW does not maintain a qualified informal dispute settlement procedure (Nevada), but then subsequently moved to a state where BMW does maintain such a procedure (California)-dismissing Freas' suit would make little sense. The express purpose of the informal dispute settlement requirement is "to encourage warrantors to establish procedures whereby consumer disputes are fairly and expeditiously settled through informal dispute resolution mechanisms." 15 U.S.C. § 2310(a)(1) (emphasis added). This Congressional policy would not be furthered by allowing BMW to benefit from the sheer accident that Freas moved to an AUTO LINE state after purchasing the Vehicle, when BMW itself elected not to establish a similar dispute resolution mechanism in Nevada.
The Court accordingly declines to stay or dismiss this lawsuit and order Freas to use the AUTO LINE procedure, which would be non-binding in any event. See 16 C.F.R. § 703.5(j) ("Decisions of the [informal dispute settlement procedure] shall not be legally binding on any person."); Cunningham v. Fleetwood Homes of Ga., Inc., 253 F.3d 611, 618 (11th Cir. 2001) (The "informal dispute settlement procedure of § 2310(a)(3) is a non-binding mechanism, in that it serves at most as a prerequisite, and not a bar, to relief in court.").
C. Express Warranty Theory
BMW argues that Freas' breach of express warranty theory fails as a matter of law because: (i) the remedies provided by Nevada's Lemon Law, Nev. Rev. Stat. § 597.600 et seq., are available only to purchasers of new cars, and thus Freas *1135 has no remedy as a user car purchaser; and (ii) the Lemon Law's statute of limitations, Nev. Rev. Stat. § 597.650, bars Freas' claim. (Doc. No. 33 at 12-14.) The Court rejects both arguments.
As an initial matter, BMW is correct that the Nevada Lemon Law only regulates warranties arising from the sale of new vehicles. See Nev. Dep't of Taxation v. Chrysler Group LLC, 129 Nev. 274, 300 P.3d 713, 716 (2013) ("We ... note that the legislative intent behind Nevada's lemon law was to protect buyers who purchased defective new vehicles."). But it does not then follow that purchasers of used vehicles have no remedies at all if the seller breaches an express warranty. Nothing in the statute states that the Lemon Law provides the sole and exclusive remedies for all car purchasers in Nevada, or purports to pre-empt, for example, the remedies available under Nevada's Uniform Commercial Code for purchasers of defective goods. See Nev. Rev. Stat. § 104.2601. In fact, the statute says just the opposite: "The provisions of [the Lemon Law] do not limit any other right or remedy which the buyer may have by law or by agreement." Nev. Rev. Stat. § 597.670. The better way to read the Lemon Law-and the interpretation most faithful to its status as "a remedial statute that should be read broadly in favor of the consumers the law was designed to protect," Milicevic v. Mercedes-Benz USA, LLC, 256 F.Supp.2d 1168, 1175 (D. Nev. 2003), aff'd 402 F.3d 912 (9th Cir. 2005) -is that it has nothing at all to say about used vehicles one way or another. This interpretation is particularly preferable because accepting BMW's argument would render illusory all of the express warranties BMW issued to buyers of its certified pre-owned vehicles in Nevada.
Relatedly, because Nevada's Lemon Law only applies to new vehicles, BMW's statute of limitations argument also fails. Although Nev. Rev. Stat. § 597.650 provides that breach of warranty claims "must be commenced within 18 months after the date of the original delivery of the motor vehicle to the buyer," by its own terms, this limitations period applies only to "action[s] brought pursuant to [the Lemon Law]." Because Freas' warranty claims relate to a used vehicle, and are thus not brought pursuant to the Lemon Law, § 597.650 is inapplicable.
Rather, the correct statute of limitations is found in Nevada's Uniform Commercial Code, which states that: "An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued." Nev. Rev. Stat. § 104.2725(1).[6] "A cause of action accrues *1136 when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." Id. § 104.2725(2). "A breach of warranty occurs when the tender of delivery is made...." Id. Here, Freas purchased the vehicle on March 12, 2014, and commenced this lawsuit on August 1, 2017. Because this lawsuit was "commenced within 4 years after the cause of action ... accrued," it is not time barred. Id. § 104.2725(1).
Accordingly, the Court denies BMW's motion for summary judgment as to Freas' Magnuson-Moss/breach of express warranty theory.
D. Implied Warranty of Merchantability Theory
Freas also claims that BMW breached the implied warranty of merchantability created by Nevada's Uniform Commercial Code. See Nev. Rev. Stat. § 104.2314(1) ("[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."). Relevant here, Nevada law would consider the Vehicle merchantable if it: (i) could "[p]ass without objection in the trade under the contract description;" and (ii) was "fit for the ordinary purposes for which [vehicles] are used." Id. § 104.2314(2)(a), (c).[7]
BMW argues that it is entitled to summary judgment on Freas' implied warranty theory because: (i) Freas has allegedly presented no evidence that the Vehicle does not meet the standards for merchantability set by Nev. Rev. Stat. § 104.2314(2) ; and (ii) BMW allegedly fixed each individual problem raised during Freas' eleven servicing requests. (Doc. No. 33 at 15-17.) As Freas rightly rejoins however, BMW's arguments ring hollow and would require the Court to apply an overly rigid construction of the law.
At bottom, Freas' theory of the case is a simple one. He paid a substantial sum of money for a used luxury vehicle from a reputable dealer, and expected the vehicle to run as advertised. Instead, the Vehicle allegedly has serious engine problems that have not been resolved despite eleven service requests and more than sixty days in the shop. A reasonable trier of fact could find that the Vehicle was not merchantable when delivered, and was not subsequently made merchantable by BMW's servicing attempts, based on Freas' testimony and the number of service requests involved. See Nev. Contract Servs., Inc. v. Squirrel Cos., Inc., 119 Nev. 157, 68 P.3d 896, 899-900 (2003) (reversing grant of summary judgment in case where liquor dispenser suffered from unexplained malfunctions and holding "that it is too burdensome to require a plaintiff to prove precisely why a product does not work in a breach of warranty action, specifically in instances ... where a product integrating electronic and mechanical components is involved" (footnote omitted) ).
Havas v. Love, 89 Nev. 458, 514 P.2d 1187 (1973) is instructive. There, the plaintiff bought a motor bus from the defendant. Id. at 1188. "On the day that [the plaintiff] was to accept delivery of the bus he noticed smoke coming from the air conditioning unit." Id."After a wait of three or four hours during which the [defendant] attempted to repair the bus [the plaintiff] again observed smoke and fumes *1137 coming out of the motor and from underneath the hood of the vehicle." Id. The Nevada Supreme Court held that the plaintiff's lay observations were sufficient to support "a finding that the motor bus ... was not fit for its intended use and failed to conform to the implied warranty of merchantability contained in the purchase agreement." Id. The same reasoning is equally applicable here-if the trier of fact believes Freas' representations about the Vehicle's defects, it could conclude that the Vehicle was not merchantable when delivered. See also Stover v. Findlay RV Ctr., Inc., No. 2:09-cv-01859-GMN-RJJ, 2010 WL 3328068, at *7 (D. Nev. Aug. 20, 2010) (declining to dismiss breach of warranty action over defective motor home where the plaintiffs alleged "numerous defects" that prevented them from using the motor home for lengthy periods).
Accordingly, the Court also denies BMW's motion for summary judgment as to Freas' Magnuson-Moss/breach of implied warranty theory.
Conclusion
For the foregoing reasons, the Court concludes that: (i) Nevada law governs Freas' Magnuson-Moss claim; (ii) Freas did not violate Magnuson-Moss' informal dispute resolution requirement; (iii) Freas' express warranty theory is not barred by Nevada's Lemon Law, or the Lemon Law's statute of limitations; and (iv) genuine issues of material fact preclude summary judgment on Freas' implied warranty of merchantability theory. The Court accordingly denies BMW's motion for summary judgment.
IT IS SO ORDERED.

Nevada's UCC statute of limitations is applicable, even though this action was commenced in California, because of Civil Code § 361. See Flowers v. Carville, 310 F.3d 1118, 1123 (9th Cir. 2002) (holding that federal courts applying state law must apply the forum state's borrowing statute in determining which state's statute of limitations governs). That section states that when "a cause of action has arisen in another State ... and by the laws thereof an action thereon cannot there be maintained against a person by reason of the lapse of time, an action thereon shall not be maintained against him in [California], except in favor of one who has been a citizen of [California], and who has held the cause of action from the time it accrued." Cal. Civil Code § 361. Because Freas was a Nevada citizen at the time his cause of action accrued (the day BMW delivered the Vehicle to him, see Nev. Rev. Stat. § 104.2725(2) ), Freas is not eligible for § 361's carve-out for California citizens. See McCann v. Foster Wheeler LLC, 48 Cal. 4th 68, 85, 105 Cal.Rptr.3d 378, 225 P.3d 516 (2010) ("Past cases establish that [§ 361's] exception applies only where the plaintiff was a California citizen at the time the cause of action accrued, and does not extend to a plaintiff who became a citizen of California after the cause of action accrued but before the lawsuit in question was filed."). Freas' claims are thus subject to any applicable Nevada limitations periods.

Although Nevada's UCC contains other requirements for goods to be merchantable, none of the others appear applicable to automobiles. Nev. Rev. Stat. § 104.2314(2)(b), (d)-(f).