23CA1662 Peo v Westerfield 12-04-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1662
Arapahoe County District Court No. 16CR2483
Honorable Eric B. White, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Brett Russell Westerfield,

Defendant-Appellant.

---

ORDER AND SENTENCE AFFIRMED

Division VI
Opinion by JUDGE WELLING
Kuhn and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 4, 2025

---

Philip J. Weiser, Attorney General, Jaycey DeHoyos, Assistant Attorney General, Yaried A. Hailu, Assistant Attorney General Fellow, Denver, Colorado, for Plaintiff-Appellee

The Noble Law Firm, Tara Jorfald, Lakewood, Colorado, for Defendant-Appellant

¶ 1     Defendant, Brett Russell Westerfield, appeals the trial court's order revoking his probation and resentencing him to Sex Offender Intensive Supervision Probation (SOISP).  We affirm.

## I.     Background

¶ 2     In 2016, police found over 55,000 photos and over 300 videos of child sexual exploitation on Westerfield's computer.  He was charged with three counts of third degree felony child exploitation and one count of fourth degree felony child exploitation.  Westerfield rejected a plea deal that would have required him to serve four years in prison.  But he went on to plead guilty to all the charges, and the court sentenced him to twelve years on SOISP.

¶ 3     Upon being placed on SOISP, Westerfield was advised of and acknowledged that he understood the various terms of his probation sentence.  Among those terms, was compliance with a "Computer Use Agreement for Sex Offenders" (computer use agreement).  As relevant to the issues before us, the computer use agreement contained the following provisions, each of which Westerfield acknowledged with his initials:

_BRW_ Client shall not use the computer for any purpose which might further sexual activity. Such use includes, but is not limited to, possession or viewing of material that is sexual in nature.

_BRW_ Client shall be prohibited from possessing or viewing certain materials related to, or part of, the grooming cycle for his/her crime. Such materials include, but are not limited to, the following:
_BRW_ Images of your victim.
_BRW_ Stories or images related to your crime or similar crimes.
_BRW_ Images which depict individuals similar to your victims.
_BRW_ Stories written about or for individuals similar to your victim.
_BRW_ Materials focused on the culture of your victim.

¶ 4     In order to monitor Westerfield's compliance with the computer use agreement, AJ Monitoring (the monitoring service) installed monitoring software on his electronic devices, including his personal computer. The monitoring service would send probation periodic reports regarding Westerfield's computer use.

¶ 5     By all accounts, Westerfield's progress in SOISP was a success. Based on this progress, Westerfield was granted permission to have and use a personal computer, an external hard drive, and USB devices (all still subject to the computer use agreement). After over four years on SOISP, his probation officer recommended the discontinuation of SOISP and that he be placed on regular probation. The trial court granted the motion. Even after transitioning from SOISP to regular probation, the court required Westerfield's compliance with the computer use agreement, including the terms excerpted above.

¶ 6     About four months after he was transitioned from SOISP to regular probation, the probation department received a report from the monitoring service indicating that Westerfield had accessed a folder on his computer named "Boys" and that the "Boys" folder contained images of children. The report also indicated that the monitoring service had detected in the "Boys" folder a picture of a young boy pulling up a young girl's skirt.

¶ 7     Three days after the department received the report from the monitoring service, Westerfield told his probation officer that he was in possession of pictures of minors in a folder named "Boys" and said that the folder contained "a series of odd things boys do." Three days later, Westerfield's probation officer requested that Westerfield bring his computer to the probation office so that it could be inspected. Westerfield complied with this request. When Westerfield brought his computer into the probation department, the probation officers were unable to locate the "Boys" folder,

leading probation to believe that Westerfield had deleted it.[1]  Eleven days later, two probation officers viewed Westerfield's laptop, and they found pictures of children in various folders on Westerfield's laptop.

¶ 8     Based on this series of events, the department filed a complaint to revoke Westerfield's probation.  The complaint referenced finding "multiple pictures of minor-aged children . . . within multiple folders" and alleged that Westerfield "was not given permission to possess or store any pictures of minor-aged children." The complaint further alleged that, by possessing pictures of minors on his computer, Westerfield had violated the terms of his probation as set forth in the computer use agreement.  About seven months after filing the initial probation revocation complaint, the

---

[1] After the probation department filed the initial complaint, Westerfield brought his laptop to the department again, and this time the probation officer was able to locate the folder labeled "Boys."  The folder contained numerous photos of minors (including the one depicting a young boy pulling up a young girl's skirt). Based on this second inspection, the probation department determined that — contrary to earlier suspicion — Westerfield hadn't deleted the "Boys" folder or any of the files contained in the folder.  To the extent that the probation complaint contained an allegation or inference that Westerfield violated probation by deleting files or a folder, the allegation was abandoned by the time the complaint proceeded to a hearing.

department filed an amended complaint; no additional allegations were made in the amended complaint.[2]

¶ 9 After the court advised him concerning the complaint, Westerfield entered a denial and requested a hearing. After a two-day revocation hearing, the trial court found that the pictures in the "Boys" folder weren't "deviant" or "sexually explicit or exploitive." Still the court found that by possessing pictures of minors — even ones that were "arguably innocent" — Westerfield violated the terms and conditions of his probation. Based on this finding, the trial court revoked Westerfield's probation and sentenced him to eight years of SOISP with a thirty-day jail sentence as a condition of probation.

## II. Issues on Appeal

¶ 10 Westerfield advances three contentions on appeal. He contends that the trial court erred by (1) finding that he violated the terms of his probation because the evidence was insufficient to

---

[2] The complaints are substantially similar to each other except that the amended complaint doesn't contain language from the computer use agreement forbidding Westerfield from deleting "records of computer use" without authorization from probation. The amended complaint also removed probation's request that the court issue a warrant for Westerfield's arrest.

sustain the violation as alleged in the amended complaint; (2) failing to make sufficient findings when it revoked and reinstated his probation sentence; and (3) violating his due process rights by permitting the probation department to arbitrarily apply the Sex Offender Management Board (SOMB) guidelines in determining whether to file the complaint to revoke his probation without consulting his former therapist and treatment provider. We address, and reject, his contentions in turn.

A. The Record Supports the Trial Court's Finding that Westerfield Violated Probation

¶ 11    Westerfield argues that the prosecution didn't offer sufficient evidence to prove that he violated his probation by using his computer to possess material that is sexual in nature or part of the grooming cycle for his crimes. Alternatively, he argues that because the trial court found that he violated his probation by virtue of the terms of the safety plan requests, the department never gave him sufficient notice of that alleged violation. We disagree that the trial court erred.

## 1. Standard of Review

¶ 12    To sustain a probation revocation petition, the prosecution must prove by a preponderance of the evidence that a probationer violated a condition of probation. *People v. Howell*, 64 P.3d 894, 896 (Colo. 2002). We review sufficiency of the evidence claims de novo. *McCoy v. People*, 2019 CO 44, ¶ 2. In doing so, we review the record to determine whether the evidence offered at the revocation hearing, when viewed in the light most favorable to the prosecution, was substantial and sufficient to sustain the probation violation. *People v. Perez*, 2016 CO 12, ¶ 8.

¶ 13    Notice in the context of a probation revocation proceeding is critical in two respects. First, "[a] defendant must be given written notice of the conditions of his probation." *People v. Calderon*, 2014 COA 144, ¶ 24; *see* § 18-1.3-204(3), C.R.S. 2025. After all, "a criminal defendant is presumed to know that the violation of any term of his probation may result in revocation." *People v. Zimmerman*, 616 P.2d 997, 999 (Colo. App. 1980). And for that principle to operate, a probationer must be given notice of the terms and conditions of probation so that the probationer can comply with them. *Id.*

¶ 14 Second, a defendant facing revocation is entitled to written notice of the alleged violations. *Finney v. People*, 2014 CO 38, ¶ 28; *see* § 16-11-205(5), C.R.S. 2025. Under section 16-11-205(5), a complaint alleging that a probationer has violated a condition of probation must "identify the violation charged and the condition of probation alleged to have been violated," among other things. Whether a complaint gives the notice required by section 16-11-205(5) is a mixed question of law and fact, so we review the trial court's conclusions of law de novo but defer to its findings of fact. *Calderon*, ¶ 32.

### 2. Additional Facts

¶ 15 The amended complaint contains a single count, containing both the probation terms the department alleges Westerfield violated and the conduct it alleges violated those terms. The count begins by setting forth the following terms of the computer use agreement:

> On December 28, 2018, the defendant signed a Computer Use Agreement for Sex Offenders acknowledging the following:
>
> "Client shall not use the computer for any purpose which might further sexual activity. Such use includes, but is not limited to,

possession or viewing of material that is sexual in nature", and,

"Client shall be prohibited from possessing or viewing certain materials related to, or part of, the grooming cycle for his/her crime. Such materials include, but are not limited to, the following: Stories or images related to your crime or similar crimes *and [i]mages which depict individuals similar to your victims*".

(Emphasis added.)

¶ 16   The complaint goes on to allege that Westerfield violated the terms of his probation, as follows:

On May 10, 2022, the probation officer reviewed a computer monitoring report from AJ Monitoring. The report indicated that between March 28, 2022 and April 27, 2022, the defendant accessed a folder on his laptop named, "Boys", which was located in a "My Pictures" folder. A picture of a young boy pulling up a young girl's skirt was caught during the monitoring search under the file name, "Curious". . . .

On May 13, 2022, the defendant advised the probation officer he was in possession of pictures of minors in the folder "Boys" and that the folder contained "a series of pictures depicting odd things boys do".

On May 24, 2022, [two] probation officer[s] . . . viewed the defendant's laptop. Multiple pictures of minor-aged children were located within multiple folders. The defendant was not given permission to possess or store any pictures of minor-aged children.

¶ 17 At the revocation hearing, four witnesses testified: (1) Rachelle Boespflug, Westerfield's probation officer; (2) Michelle Kellond, a private investigator retained by the defense; (3) Jacque Sumida, Westerfield's therapist and former SOISP treatment provider; and (4) Linda Westerfield, Westerfield's wife.

¶ 18 Based on the evidence presented at the hearing, the trial court found that Westerfield violated the two conditions of probation set forth in the amended complaint by possessing images of children on his computer, as follows:

> With respect to these complaints, what it comes down to is the allegation of the defendant while on probation inappropriately was in possession of[,] on a computer[,] a number of files containing children. . . .
>
> There are two relevant conditions alleged in the [complaints] . . . . [C]lient shall not use the computer for any purposes which might further sexual activity. Such uses includes but is not limited to possession or viewing of material that is sexual in nature and the next condition immediately underneath it, client shall be prohibited from possessing or viewing certain materials related to or a part of the grooming cycle for his or her crime. Such materials include but are not limited to — the actual agreement here says image — images of your victims, stories or images related to your crime or similar crimes, images which depict individuals similar to your victims, stories

written about or for individuals similar to your victim, materials focused on the culture of your victim.

. . . .

So what we've got here is the defendant having pled guilty to offenses regarding [sexual exploitation of children] and now we have pictures that are showing up with children, albeit arguably innocent pictures of children that he knew he couldn't possess and that he, himself, indicated in his safety plan that were dangerous for him to possess.

. . . .

So the Court does find that the People have proven by a preponderance of the evidence that the defendant violated his probation as alleged in [the complaints] for the reasons I've just indicated.

### 3. Analysis

#### a. Sufficiency of the Evidence

¶ 19 Westerfield first argues that simply possessing pictures of minors — which is all that was proved at the hearing — on its own, is insufficient to establish that he violated the terms of his probation. Instead, he argues that in order to establish a violation of the provisions of the computer use agreement cited in the probation revocation complaint, the prosecution had to prove that

the images he possessed were sexual in nature. We disagree for several reasons.

¶ 20    To begin, we disagree with Westerfield's constrained reading of the computer use agreement and its restrictions. The materials he is prohibited from possessing under the computer use agreement aren't limited to sexually explicit material. To be sure, the computer use agreement does prohibit Westerfield from "possessi[ng] or viewing . . . material that is sexual in nature," but that is not the full extent of the limitations the agreement imposes. The computer use agreement also prohibits Westerfield from possessing material related to or part of "the grooming cycle" for his crime. Those "grooming cycle" materials are explicitly defined to include "[i]mages which depict individuals similar to your victims." This definition expressly captures images of children as part of Westerfield's grooming cycle. And this prohibition is in no way tied to the materials being sexual in nature — just that they "depict individuals" similar to his victims, that is, children.

¶ 21    And the court found, with record support, that Westerfield did possess images of children who were similar to his victims. Recall that the charges that Westerfield pleaded guilty to were based on

12

Westerfield possessing over 55,000 photos and over 300 videos of child sexual exploitation on his computer. Westerfield's therapist confirmed during her testimony that the images that Westerfield admitted to possessing in connection with his criminal conviction included "many photos and videos of prepubescent boys as well as pubescent boys." Each of these children depicted in the materials Westerfield possessed was a "victim" of his criminal offense. *Cf.* § 18-6-403(1.5), C.R.S. 2025 (noting that each time child exploitation "material is shown or viewed, the child [depicted] is harmed"). Accordingly, the evidence presented at the hearing supports the trial court's finding that he violated the terms of his probation by possessing the images contained in the "Boys" folder.

¶ 22 Still, Westerfield contends that the prosecution didn't prove that the pictures were part of his "grooming cycle." His contention in this regard may have had some purchase if what constituted "materials related to, or part of, the grooming cycle for [Westerfield's] crime" was undefined. But it's not. As discussed, the computer use agreement goes on to provide that such materials include, but are not limited to, "[i]mages which depict individuals similar to your victims." And this prohibition doesn't require that

13

the images be sexual or exploitive in nature to fall within its scope. Thus, the sufficiency question turns not on whether the images were sexual but instead whether they depicted individuals similar to Westerfield's victims — and they did.

¶ 23 In short, the terms of the computer use agreement specifically prohibited Westerfield from not only possessing images that are sexual in nature but also images that "depict individuals similar to [his] victims." The evidence presented at the hearing established that there were multiple pictures of minor-aged children located within multiple folders on Westerfield's laptop. Westerfield wasn't given permission to possess or store any pictures of minor-aged children. Because all the prosecution had to prove was that Westerfield possessed images of minors similar to his victims on his computer, and it did, the evidence was sufficient and substantial enough to prove Westerfield violated his probation by a preponderance of the evidence.

b.    Sufficiency of the Notice

¶ 24 Westerfield appears to also contend that if the terms of his probation prohibited him from possessing any images of children, that restriction came not from the computer use agreement but was

14

based on the terms of various safety plans, violations of which were not alleged in the probation revocation complaint.

¶ 25    During the revocation hearing, the prosecution introduced into evidence several "safety plans" that Westerfield signed as part of his requests to use various electronic devices including a phone, a computer, and an external hard drive.  Each safety plan stated,

> *High Risk Factors can be Internal (thoughts and feelings), and external (people, places situations, sights, sounds, etc.) experiences that threaten your self-control and present a threat to you maintaining your abstinence from inappropriate or deviant thoughts, feelings, and behaviors.*

> List as many of your High Risk Factors you can think of that are connected with your request.  Consider where you will be, who you may come in contact with, feelings and situations that may arise, etc.  Be sure to consider all of the restrictions of probation and your Treatment Contracts.

¶ 26    The first high-risk factor that Westerfield identified in connection with his use of electronic devices was "contact with minors/pictures of minors."  As Westerfield's response illustrates, he knew that he was prohibited from possessing images of minors and that the prohibition was intended to prevent him from falling back into his grooming cycle.

¶ 27　　Westerfield's argument appears to be that the *only* provision of his probation that prohibited him from possessing nonsexual images of minors was the safety plan, and the complaint didn't allege that he violated the safety plan.  Thus, he argues, the probation revocation complaint didn't give him sufficient notice of the alleged violation he was defending against.  Where this argument falls short, however, is that *both* the safety plans and the computer use agreement prohibited him from possessing any images of children.  The fact that the safety plans are more specific than the computer use agreement doesn't make the latter insufficient to put Westerfield on notice of the condition of probation he was accused of violating — that is, the condition that precluded him from viewing or possessing images that depicted individuals similar to his victims.  And, as previously explained, Westerfield's statements in the safety plan confirm that he understood that he was prohibited from possessing images of children, whether sexual or not.

¶ 28　　As discussed above, due process demands that a probationer be given two types of notice when they are alleged to have violated probation.  First, a probationer must have been given notice of the

terms of their probation. *Calderon*, ¶ 24. The second type of required notice is written notice of the alleged condition of probation he is accused of violating. *Finney*, ¶ 28; *see* § 16-11-205(5). Westerfield received both types of notice. The terms of the computer use agreement restricted him from possessing or viewing images that depicted individuals similar to his victims, and the safety plans demonstrate that Westerfield understood that provision to be a blanket ban on possessing or viewing images of minors — deviant or otherwise.[3] The amended probation revocation complaint cited this provision of the computer use agreement and referenced the fact that Westerfield had images of minors on his computer as the offending conduct. Accordingly, we reject Westerfield's argument that he didn't have notice of the terms of probation he was accused of violating.

---

[3] We note that, in finding the probation violation, the district court stated that it wasn't considering any "family photos" on Westerfield's computer. Neither party raises issues concerning family pictures on appeal, so we need not address that issue further. *See generally People v. Cooley*, 2020 COA 101 (discussing constitutional limitations on prohibiting probationers from having contact with their children).

## B. Revocation of Probation

¶ 29 Westerfield next argues that the trial court abused its discretion by revoking and reinstating his probation because, even if the prosecution presented sufficient evidence at the hearing to prove a violation, the trial court failed to make the necessary findings on why revoking Westerfield's probation was necessary. Again, we disagree.

### 1. Additional Facts

¶ 30 About two months after the revocation hearing, the trial court held a sentencing hearing, at which the trial court heard arguments from the prosecution that Westerfield hadn't disclosed certain information about his sexual history on his newest offense-specific evaluation (OSE). The prosecution argued that Westerfield hadn't disclosed all his sexual history so that he could lower his risk assessment.

¶ 31 The trial court agreed with the prosecution and inquired as to whether a jail sentence was appropriate:

> It seemed to me — in — in very brief review,
> and I didn't have much time — that there are
> less robust disclosures made related to this
> more recent OSE. So what this comes down to
> is whether or not that means that I should

now sentence [Westerfield] to the penitentiary based upon the findings that I made related to his violations here. So that's really what it's going to come down to. That's all we're down to.

The Court heard — and I think that [defense counsel]'s right — it was two separate days of testimony related to these violations.

¶ 32    Ultimately, the trial court revoked Westerfield's probation and sentenced him to eight years of SOISP — one more year than what he had left on his original sentence:

So what we've got then is: What price is [Westerfield] to pay for having done these things that by the People's reckoning, I suppose, are indicative of his deceit, his sneakiness, his desire to fail to fully disclose the information that he should be disclosing in the course of treatment? What price is to be paid for that decision as it also relates then to this lack of additional full robust disclosure that the People argue should have been presented, at least by implication, to the current OSE evaluator?

The Court is comfortable that Probation can sort this out in the course of treatment and figure out what it is going wrong if Probation is right, if the People are right, with probation and how it is that [Westerfield] continues to deceive probation.

. . . .

So here's what I'm going to do. I'm going to sentence [Westerfield] to eight years of SOISP

probation.  That gives [Westerfield] some credit for the time on the things he did right and the progress that he made and doesn't overly punish him.

¶ 33    The trial court also sentenced Westerfield to thirty days in jail as a condition of probation:

> All right.  Well, here's the thing.  At the end of the day, a jail sentence is punitive, right?  And so the violations here, although characterized by the [d]efense as minor and characterized by the People as concerning, I suppose, for a lack of a better word, are violations nonetheless. So I think that there can and, in certain instances, should be a punitive part of a sentence.  And that is where I'm at here. . . .
>
> So I do believe a punitive sentence is appropriate.  I think a [thirty]-day jail sentence is appropriate.

### 2.    Standard of Review

¶ 34    The decision to revoke a defendant's probation after a violation has been found is within the trial court's discretion.  *People v. Fair*, 2013 COA 41, ¶ 12.  After determining that a probationer has violated a condition of their probation, if the trial court revokes probation, it may impose any sentence or grant any probation which "might originally have been imposed or granted."  § 16-11-206(5), C.R.S. 2025.

¶ 35    The trial court must "state on the record the basic reasons for imposing the sentence." *People v. Fuller*, 791 P.2d 702, 708 (Colo. 1990) (quoting *People v. Watkins*, 613 P.2d 633, 637 (Colo. 1980)).

### 3.    Analysis

¶ 36    Westerfield argues that the trial court abused its discretion in revoking and reinstating his probation because it didn't make any findings of fact for the sentence it imposed. *See Fuller*, 791 P.2d at 708. The record demonstrates otherwise.

¶ 37    First, the trial court found that Westerfield hadn't fully disclosed his sexual history to the OSE evaluator. Then the trial court sentenced Westerfield to eight years of SOISP so that the probation department could decide through treatment how to deal with Westerfield's lack of transparency as it related to the OSE.

¶ 38    But the trial court was clear that the jail sentence was imposed to punish Westerfield for the probation violation — not the lack of disclosure to the OSE evaluator. When imposing sentence, the court explicitly said it was doing so "based upon the findings that I made related to his violations here" and discussed the "two separate days of testimony related to these violations" it had heard. The "two separate days of testimony" the court referenced were

focused on Westerfield's probation violation. During the revocation hearing, the prosecution never alleged or offered evidence that Westerfield hadn't disclosed all his sexual history to the OSE evaluator. That didn't happen until the sentencing hearing. Thus, it's clear that the trial court extended Westerfield's probation because it found a lack of disclosure to the OSE evaluator but sentenced him to thirty days in jail for the probation violation.

¶ 39 Because the court's sentencing decisions were supported by adequate factual findings, we discern no abuse of discretion.

### C. SOMB Guidelines

¶ 40 Last, Westerfield argues that probation failed to follow the SOMB guidelines because they didn't (1) consult with the treatment provider — Westerfield's therapist Sumida — about the potential violation; (2) conduct a full assessment before filing a revocation complaint; or (3) work with the treatment provider to determine the appropriate response to Westerfield's probation violation.[4]

---

[4] Westerfield also argues that the probation department violated his due process rights by alleging in the complaint that a photo of an actress found on his computer was also grounds for revocation. But because the court ultimately revoked his probation solely based on the images in the "Boys" folder, his argument is irrelevant, and we decline to address it.

### 1. Standard of Review

¶ 41 We review whether a defendant's due process rights were violated de novo. *Calderon*, ¶ 23. When a sex offender is sentenced to SOISP, their probation officer and their treatment provider must make recommendations to the court that are based on "criteria established by the [SOMB]." § 18-1.3-1010(2)(a), C.R.S. 2025.

### 2. Analysis

¶ 42 Westerfield argues that the probation department arbitrarily chose which SOMB guidelines it applied to Westerfield's probation and revocation and that section 18-1.3-1010(2)(a) requires the probation officer to make their recommendation on whether to revoke probation based on the SOMB guidelines. We disagree for three reasons.

¶ 43 First, section 18-1.3-1010(2)(a)'s applicability is predicated on the probationer being sentenced to SOISP. While Westerfield was initially sentenced to SOISP, he had been moved to regular probation months earlier. Thus, any requirements for revoking SOISP weren't applicable to Westerfield at the time that probation filed the probation revocation complaint.

¶ 44    Second, Westerfield was no longer required to attend treatment as a condition of regular probation. His continued involvement with his therapist, while laudable, was voluntary. Thus, Sumida wasn't his SOMB treatment provider at the time probation filed the revocation complaint.

¶ 45    Finally, Westerfield argues that section 16-11.7-106(8), C.R.S. 2025, requires probation to abide by the SOMB guidelines. However, section 16-11.7-106(8) requires "supervising officers" to follow the "guidelines and standards developed pursuant to this section when working with sex offenders." Section 16-11.7-106 is concerned almost entirely with the statutory and educational qualifications for treatment providers and doesn't contemplate the SOMB procedures that Westerfield claims the probation department applied arbitrarily.

¶ 46    Since the SOMB guidelines in question aren't mandatory for probation generally, or for sex offenders not in SOISP specifically, we discern no due process violations.

### III.    Disposition

¶ 47    The order and sentence are affirmed.

JUDGE KUHN and JUDGE SCHUTZ concur.